**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| OCWEN LOAN SERVICING LLC, *et al*., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-2441 |
| | § | |
| GONZALEZ FINANCIAL HOLDINGS, | § | |
| INC., *et al*., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION**

This mortgage-foreclosure case is unusual because it begins with a foreclosure rather than

ending with one.  And it is the lender, not the borrower, challenging the foreclosure.

Deutsche Bank and Ocwen Loan Servicing LLC (collectively, "Deutsche Bank") sued

Gonzalez Financial Holdings, Abe Moss, and D&Y Investments, alleging wrongful foreclosure and

seeking a quiet-title judgment that it owned the property at issue.  Deutsche Bank was assigned a

security interest in the property in 2009, arising from a 2003 deed of trust.  The land purchasers fell

behind on their property tax payments in 2006.  That gave rise to a tax lien in favor of Gonzalez

Financial.  After Deutsche Bank recorded its lien with the Harris County Office of Public Records,

Gonzalez Financial foreclosed on the tax lien and sold the property to Abe Moss.  Gonzalez

Financial gave notice to the original mortgage servicer, which had assigned the lien to Deutsche

Bank, but not notice to Deutsche Bank, which learned of the tax sale several years later.  Moss had

sold the property to D&Y Investments ("D&Y"), a company in which he is the sole shareholder.

After discovery, Deutsche Bank moved for partial summary judgment on its quiet-title claim,

(Docket Entry No. 27), the defendants responded, (Docket Entry Nos. 29, 30), and Deutsche Bank

replied, (Docket Entry No. 31).  Based on the motion, the briefs, the arguments, the record, and the applicable law, the court grants Deutsche Bank's motion for partial summary judgment.[1]  The reasons are explained below.

## I.    Background

On November 10, 2003, Ismael Rodarte and his wife, Gladys Castro, bought the property at issue through a home-equity loan from Argent Mortgage Company, LLC, secured by a Deed of Trust.  Argent held a security interest in the property as a trustee.  Over the next three years, Rodarte and Castro stopped paying their school district property taxes.  This created a tax lien on the property.  On December 1, 2006, Rodarte and Castro authorized Gonzalez Financial to pay the delinquent property taxes, (Docket Entry No. 28, Ex. B), and consented to transferring the school district's tax lien to Gonzalez Financial.  (*Id.*, Ex. C, D).

Over two years later, in February 2009, Argent assigned the Deed of Trust to Deutsche Bank, which recorded it five days later.  (*Id.*, Ex. E).[2]  On September 1, 2009, Gonzalez Financial conducted a nonjudicial foreclosure on the property based on the delinquent tax lien and sold the

---

[1] The defendants also moved to file a supplemental response to the plaintiffs' motion for partial summary judgment, (Docket Entry No. 37).  The plaintiffs oppose that motion.  (Docket Entry No. 39).  The court grants the motion to file a supplemental response, (Docket Entry No. 37), and considers the material in that submission and the plaintiffs' opposition in reaching its conclusion below.

[2] In their notice of supplemental authority, (Docket Entry No. 37), the defendants argue that a recent case involving the same mortgage robosigner, *Vazquez v. Deutsche Bank Nat. Trust Co., N.A.*, 441 S.W.3d 783 (Tex. App.-Houston [1st Dist.] 2014), undermines Deutsche Bank's assignment evidence.  That decision, however, concerned the plaintiff's standing to challenge the assignment of her note and deed of trust, not the assignment's validity.  Although the court's determination that the plaintiff had standing to pursue her quiet title claim was based on its conclusion that she had adequately *alleged* the assignment was void under Texas's liberal notice pleading standard and pointed to deposition testimony in response to the defendants' summary judgment motion, it did not assess the validity of her forgery allegations.  *See id.* at 786-90.

property to Abe Moss. (*Id.*, Ex. F). Gonzalez Financial mailed notice of the foreclosure sale to various parties, including Argent, but not notice to Deutsche Bank. (*Id.*, Ex. G). On June 30, 2010, Moss conveyed the property by Special Warranty Deed to D&Y, which he alone owns and operates. (*Id.*, Exs. H, I, J).

In August 2013, after learning of the foreclosure,[3] Deutsche Bank sued Gonzalez Financial, Moss, and D&Y, alleging wrongful foreclosure and asserting a quiet-title claim. (Docket Entry Nos. 1, 16). The court denied the defendants' motions to dismiss. (Docket Entry No. 24). After discovery, Deutsche Bank moved for partial summary judgment, asserting that it had a security interest in the property, created by the November 10, 2003 Deed of Trust and the assignment recorded in February 2009. Deutsche Bank sought a declaratory judgment that the security interest was not extinguished by the September 2009 tax lien foreclosure because it did not have constitutionally adequate notice of the tax sale. (Docket Entry No. 27, 28). The defendants responded, (Docket Entry Nos. 29, 30), and Deutsche Bank replied, (Docket Entry No. 39).

## II.    The Applicable Legal Standards

### A.    Summary Judgment

Summary judgment is appropriate if no genuine disputes of material fact remain and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a

---

[3] The record does not reveal precisely when Deutsche Bank learned of the foreclosure, but Moss and D&Y admit that Deutsche Bank did not receive notice of the September 2009 sale, (Docket Entry No. 35, ¶ 1), and "had no clue that the taxes had not been paid" "[s]till . . . two (2) years" after the sale. (Docket Entry No. 19, at 11).

genuine [dispute] of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

When, as here, the burden of proof at trial lies with the moving party, the movant must demonstrate through its summary judgment submissions that there are no genuine disputes of material fact as to each of the elements essential to its case. The movant may satisfy its initial burden of production "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted). "'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.'" *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and explain how that evidence prevents summary judgment on the movant's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*,

538 F.3d 373, 376 (5th Cir. 2008).  "After the non-movant has been given the opportunity to raise

a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment

will be granted."  *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).

### B.      Quiet-Title

"A suit to clear title or quiet title—also known as a suit to remove cloud from title—relies

on the invalidity of the defendant's claim to the property."  *Essex Crane Rental Corp. v. Carter*, 371

S.W.3d 366, 388 (Tex. App.-Hous. [1 Dist.] 2012), no pet. h).  "A cloud on title exists when an

outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the

title of the owner of the property."  *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex.App.-Hous. [1 Dist.]

2009, pet. denied).  A suit to quiet title aims to "declare invalid or ineffective the defendant's claim

to title."  *Essex Crane*, 371 S.W.3d at 388 (citations omitted).  The elements of a quiet-title claim

are: "(1) an interest in a specific property; (2) title to the property is affected by a claim by the

defendant; and (3) the claim, although facially valid, is invalid or unenforceable."  *Cruz v.

CitiMortgage, Inc.*, No. 11–cv–2871, 2012 WL 1836095, at *4 (N.D. Tex. May 21, 2012) (citing

*Sadler v. Duvall*, 815 S.W.2d 285, 293 n. 2 (Tex. App.-Texarkana 1991, writ denied)).

A plaintiff has the burden of supplying the proof necessary to establish superior equity and

right to relief.  "The plaintiff must prove, as a matter of law, that he has a right of ownership and that

the adverse claim is a cloud on the title that equity will remove."  *Essex Crane*, 371 S.W.3d at 388.

### C.    The Texas Tax Code[4]

Section 32.06 enables a real-property owner to authorize another to pay the taxes assessed against the property.  The tax lien against the property may be transferred to the party paying the taxes.  TEX. TAX CODE § 32.06 (a-1) (2006); *Genesis Tax Loan Servs., Inc. v. Kothmann*, 339 S.W.3d 104, 107 (Tex. 2011) (observing that a tax lien "may be transferred, under specified conditions, to a person who pays the taxes with the owner's permission").  This lien takes priority over most other liens encumbering the property, including liens severed earlier.  *See* TEX. TAX CODE § 32.05(b) (2006); *see also Genesis*, 339 S.W.3d at 107 ("Seniority does not always establish superiority.  A tax lien on real property, for example, is made superior by statute to many (though not all) other liens on the property irrespective of when the liens were perfected." (citing § 32.05(b))).

A lien-transferee may foreclose after one year "in the manner specified in Section 51.002, Property Code and Section 32.065 of [the Tax Code]" when, as here, "the property owner and the transferee enter into a contract that is secured by a lien on the property."  TEX. TAX CODE § 32.06(c) (2006); (Docket Entry No. 28, Exs. B & C).  These sections require the transferee to fulfill certain conditions before foreclosing on the property, including serving notice by certified mail at least 21 days before the sale to the last known address of the mortgage servicer or holder of all recorded real

----

[4] Where applicable, the following description of Tax Code differs slightly from the current version because Gonzalez Financial acquired the tax lien on the property in 2006, and therefore that version controls this case.  *See* Act of May 25, 2007, 80th Leg ., R.S., ch. 1329, §§ 1, 4, 5, 2007 TEX. GEN. LAWS 4484–88 (current version at TEX. TAX CODE § 32.06) (providing that the 2007 amendments to § 32.06 apply only to tax lien transfers after September 1, 2007).

property liens encumbering the property.  TEX. TAX CODE § 32.065(b)(5-6) (2006); TEX. PROP. CODE. § 51.002(b) (2006).

Section 33.54 of the Texas Tax Code states that "an action relating to the title to property may not be maintained against the purchaser of the property at a tax sale unless the action is commenced . . . before the first anniversary of the date that the deed executed to the purchaser at the tax sale is filed of record."  TEX. TAX CODE § 33.54(a)(1).[5]  This one-year limitations period may be tolled for "a person other than the purchaser at the tax sale or the person's successor in interest" who "was not served citation in the suit to foreclose the tax lien" if the person "pays taxes on the property during the applicable limitations period and until the commencement of an action challenging the validity of the tax sale."  Id. § 33.54(b).  When "actions are barred by this section, the purchaser at the tax sale or the purchaser's successor in interest has full title to the property, precluding all other claims."  Id. § 33.54(c).

Under § 34.08, "[a] person may not commence an action challenging the validity of a tax sale after the time set forth in Section 33.54(a)(1) or (2), as applicable to the property, against a subsequent purchaser for value who acquired the property in reliance on the tax sale.  The purchaser may conclusively presume that the tax sale was valid and shall have full title to the property free and clear of the right, title, and interest of any person that arose before the tax sale, subject only to recorded restrictive covenants and valid easements of record. . . ."  Id. § 34.08(b).  A tax foreclosure sale extinguishes prior nontax liens, such as Deutsche Bank's lien.

---

[5]  Section 33.54 sets forth a two-year limitations period when the property involves "the residence homestead of the owner" or "land appraised or eligible to be appraised under Subchapter C or D, Chapter 23" of the Code.  See TEX. TAX CODE § 33.54(a)(2).  Neither condition applies here.

### III.   Analysis

The parties appear to agree that Gonzalez Financial foreclosed on the property under its tax lien, rather than under a standard "deed of trust" lien.[6] (*See* Docket Entry Nos. 29, 31).  The dispute is over whether this tax sale extinguished Deutsche Bank's preexisting lien.

The defendants argue that Deutsche Bank's claim is untimely under the Tax Code's one-year limitations provision and that Moss and D&Y are therefore bona fide purchasers for value with clear title.  Deutsche Bank responds that failure to provide it notice makes the foreclosure sale void (rather than voidable) so that limitations is no bar.

These arguments raise three issues.  First, does the Tax Code's limitations period bar a due-process based claim?  If so, Deutsche Bank cannot proceed.  Assuming this hurdle is passed, two more questions rise:  Did the tax sale violate Deutsche Bank's due-process rights?  And, even if Deutsche Bank's due-process rights were violated, does its quiet-title suit fail if Moss and D&Y are bona fide purchasers for value?

### A.   Whether the Tax Code's Limitations Period Bars Deutsche Bank's Quiet-Title Claim

The defendants argue that Deutsche Bank's claim is barred under § 33.54(a)(1) of the Tax Code, which required Deutsche Bank to bring any "action relating to the title" within a year of the tax sale.  Deutsche Bank does not dispute that it filed suit more than one year after Moss recorded

---

[6] Indeed, as Deutsche Bank argues in the alternative, (Docket Entry No. 28, at 8-12), if Gonzalez Financial purported to foreclose by way of a standard deed of trust rather than tax lien, it would not have extinguished Deutsche Bank's senior interest, which can be traced back to the 2003 deed of trust.  *See World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 668 (Tex. App.-Fort Worth 1998, pet. denied) ("In a contest over rights or interests in property, ordinarily the party that is first in time is first in right.").

the foreclosure purchase.  Deutsche Bank does not contend that the statute's tolling provision applies.  It does not, because Deutsche Bank did not pay the taxes on the property.  Instead, Deutsche Bank argues that because it was never given notice before the foreclosure sale, the federal Due Process Clause makes the sale void and the limitations period does not bar its quiet-title action. Putting the argument another way, because the foreclosure sale was void, rather than voidable, Deutsche Bank may collaterally attack the sale at any time (at least anytime reasonably soon after it learned of the sale), and that Moss and D&Y could not have taken the property free of all encumbrances as bona fide purchasers.

"The distinction between void and voidable judgments is critical when the time for a direct attack has expired.  Before then, the distinction is less significant because—whether the judgment is void or voidable—the result is the same: the judgment is vacated."  *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012).  The Texas Supreme Court has "described a judgment as void when 'the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act.'"  *Id.* at 272 (quoting *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010)).  When a failure to establish personal jurisdiction violates due process, for example, "a judgment may . . . be challenged through a collateral attack."  *Id.*  (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988))).

"[F]ailure to give notice violates 'the most rudimentary demands of due process of law.'" *Id.* (quoting *Peralta*).  Notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action."  *Id.* (quoting *Peralta*); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Technical defects in serving notice do not

make a judgment void; only "a complete failure or lack of service . . . violates due process." *Rivera*, at 274.  A court-imposed judgment may be collaterally attacked as void at any time if no notice fails.

One question raised here is whether a nonjudicial tax foreclosure and sale that is recorded, but not a judgment, may be similarly attacked as void.  The Supreme Court's decision in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983) permitted a due-process challenge to a nonjudicial tax sale that was final under Indiana state law.  Under that case, the tax sale in this case may be set aside as void if Deutsche Bank shows that it was not given the constitutionally required notice of the sale.

In *Mennonite*, the lienholder, Mennonite Board of Missions ("MBM"), held a security interest in real property that it had sold to Alfred Moore under a mortgage in MBM's favor.  MBM recorded this interest in 1973.  Under the mortgage, Moore agreed to pay all property taxes.  Without MBM's knowledge, Moore defaulted on his tax obligations.  At the time, "Indiana law provide[d] for the annual sale of real property on which payments of property taxes [had] been delinquent for fifteen months or longer."  *Id.* at 792-93.  The county auditor had to post notice of a scheduled tax sale in the county courthouse and publish notice once each week for three consecutive weeks.  The property owner was entitled to certified-mail notice sent to the owner's last-known address.  *See id.* at 793.  But "Indiana law did not provide for notice by mail or personal service to mortgagees [such as MBM] of property that was to be sold for nonpayment of taxes."  *Id.* at 793.  The state statute allowed lienholders like MBM to "redeem" the property within two years subject to certain conditions.  After that time expired and if a few ministerial requirements were met, the purchaser at a tax sale would acquire the property "in fee simple absolute, free and clear of all liens and encumbrances."  *Id.* at 794.  In 1977, Moore had not paid the property taxes for over 15 months.

10

The property was sold under the statutory process to Richard Adams.  MBM "was not informed of the pending tax sale either by the county auditor or by Moore."  By the time "MBM first learned of the tax sale," the two-year "redemption period had run. . . ."  *Id.* at 795.

Adams, the new buyer, sued to quiet title.  MBM responded that it "had not received constitutionally adequate notice of the pending tax sale and of the opportunity to redeem the property following the tax sale."  *Id.*  The Indiana state courts rejected MBM's arguments and ruled for Adams.  *See Mennonite Bd. of Missions, Inc. v. Adams*, 427 N.E.2d 686 (Ind. Ct. App. 1981). The Supreme Court reversed.

The Supreme Court held that "the manner of notice provided to [MBM] did not meet the requirements of the Due Process Clause of the Fourteenth Amendment."  *Mennonite Bd.*, 462 U.S. at 800.  The Court stated that:

> a mortgagee possesses a substantial property interest that is significantly affected by a tax sale.  Under Indiana law, a mortgagee acquires a lien on the owner's property which may be conveyed together with the mortgagor's personal obligation to repay the debt secured by the mortgage.  Ind. Code § 32-8-11-7.  A mortgagee's security interest generally has priority over subsequent claims or liens attaching to the property, and a purchase money mortgage takes precedence over virtually all other claims or liens including those which antedate the execution of the mortgage.  Ind. Code § 32-8-11-4.  The tax sale immediately and drastically diminishes the value of this security interest by granting the tax-sale purchaser a lien with priority over that of all other creditors.  Ultimately, the tax sale may result in the complete nullification of the mortgagee's interest, since the purchaser acquires title free of all liens and other encumbrances at the conclusion of the redemption period.

*Id.* at 798.  The Court did not expressly direct the Indiana courts to vacate the sale as void, but it reversed and remanded for proceedings "not inconsistent with this opinion."  *Id.* at 800.

Based on this reasoning, one Texas Court of Appeals has vacated a tax sale similar to the one at issue here.  In *Security State Bank & Trust v. Bexar Cnty.*, 397 S.W.3d 715, 721 (Tex. App.-San Antonio, 2012, pet. denied), the plaintiff bank "had a recorded deed of trust and first lien" against the property when the delinquent-tax suit was filed.  *Id.* at 721.  The court held that the bank:

> had a property interest that it was entitled to protect which would be, and in fact was, significantly affected by the tax suit and subsequent tax sale; thus, it was constitutionally entitled to notice in order to afford it an opportunity to protect its property interest.  *Mennonite Bd.*, 462 U.S. at 798–99.

*Id.* at 722-23.  Because "the Bank was not served with notice of the 2009 tax suit," which was "complete lack of notice" that "constitut[ed] a due process violation," the Texas court held that "the tax judgment and tax sale [were] void as to the Bank and subject to being set aside through a collateral attack."  *Id.* at 723 (citing *Peralta*, 485 U.S. at 86-87 ("Where a person has been deprived of property in a manner contrary to the most basic tenets of due process, . . . only wip[ing] the slate clean . . . would . . . restore[ ] the petitioner to the position he would have occupied had due process of law been accorded to him in the first place." (quotation omitted))).  The court rejected the defendants' argument that the bank's suit was "[time-]barred by its failure to comply with sections 33.54 and 34.08 of the Tax Code" because "the Bank's suit was a proper collateral attack, independent of the Tax Code, based on a violation of its due process rights that render[ed] the tax judgment and tax sale void as to it."  *Id.* at 723-24.

It is undisputed that Deutsche Bank had a recorded Deed of Trust and first lien against the property when Gonzalez Financial foreclosed on its junior tax lien.  "A lienholder possesses a legally protected property interest."  *Security State*, 397 S.W.3d at 721 (citing *Mennonite Bd.*, 462

U.S. at 798).  Deutsche Bank, like the lienholders in *Mennonite* and *Security State*, was a record

lienholder with a security interest in the property when the tax foreclosure occurred, which had the

effect of "immediately and drastically diminish[ing] the value of this security interest."  *Mennonite*

*Bd.*, 462 U.S. at 798; *Security State*, 397 S.W.3d at 721 ("Because a tax sale significantly affects a

[lienholder]'s property interest, due process requires that the lienholder receive notice of the pending

tax sale." (citing *Mennonite Bd.*)).  If Deutsche Bank was not given constitutionally required notice,

then limitations does not bar its action to set aside the tax sale and to quiet title.[7]

Like the defendants in *Security State*, Gonzalez Financial, Moss, and D&Y "cite several

cases holding that, regardless of the merits of a challenge to a tax sale, the challenger's suit must be

brought within the Tax Code's limitations period and it must make the required deposit prior to

filing suit," *Security State*, 397 S.W.3d at 724; *see Roberts v. T.P. Three Enters., Inc.*, 321 S.W.3d

674, 677–78 (Tex. App.-Houston [14th Dist.] 2010, pet. denied) (limitations barred a trespass-to-try

---

[7]  Because the school district transferred its tax lien to Gonzalez Financial, a private entity,
before the tax sale, the state-action issue is less straightforward than in *Mennonite* or *Security State*,
which both involved tax sales by public entities.  Although neither party addressed this issue, the
Fifth Circuit has.  *See Davis Oil Co. v. Mills*, 873 F.2d 774, 788 (5th Cir. 1989) ("A seizing creditor
who avails itself of state foreclosure procedures is constitutionally obligated to provide 'notice
reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the
action.'" (quoting *Mullane*, 339 U.S. at 314)); *see also USX Corp. v. Champlin*, 992 F.2d 1380, 1385
(5th Cir. 1993) ("[A]lthough Louisiana law did not entitle Champlin and the FDIC to notice of
foreclosure, the Fourteenth Amendment did require USX [, a private party,] to notify them." (citing
*Davis*)).

Gonzalez Financial set into motion the procedures for foreclosing Deutsche Bank's property
interest, and the tax sale was held at the county courthouse after public notice was posted at the
"officially designated place for the posting of notices of non-judicial foreclosure sales in the
County" under the state's tax-foreclosure procedures.  (Docket Entry No. 28, Ex. F).

title action by adverse claimants against a tax-sale purchaser); *W.L. Pickens Grandchildren's Joint Venture v. DOH Oil Co.*, 281 S.W.3d 116, 121 (Tex. App.-El Paso 2008, pet. denied) (Tax Code's limitations period for challenging the validity of a tax foreclosure sale applied to a former mineral-interest owner's suit, even though the owner was not served with notice of the tax foreclosure); *Session v. Woods*, 206 S.W.3d 772, 778 (Tex. App.-Texarkana 2006, pet. denied) (regardless of the merit of the challenger to the validity of a tax sale, the Tax Code statute of limitations barred an action to reclaim the property); *John K. Harrison Holdings LLC v. Strauss*, 221 S.W.3d 785, 791 (Tex. App.-Beaumont 2007, pet. denied) (a foreclosure judgment was voidable as against parties not joined in the tax foreclosure, but the challenging party had to comply with the Tax Code, including its limitations provision); *Jordan v. Bustamonte*, 158 S.W.3d 29, 39-40 (Tex. App.-Houston [14th Dist.] 2005-pet. denied) (three-year delay in challenging the tax-sale validity barred the suit; the purchaser and successor in interest had full and clear title.).  According to the defendants, these cases bar Deutsche Bank's suit.

None of these cases, however, cited *Mennonite*, which rests on the premise that if a tax sale has extinguished a record lienholder's rights and has otherwise become final under state law, that sale may nonetheless be set aside as void for lack of due process.  Nor did these cases squarely consider a due-process challenge based on the federal Constitution.  *See W.L. Pickens*, 281 S.W.3d at 120 (rejecting an "open courts" challenge under the Texas Constitution); *Roberts*, 321 S.W.3d at 678-79 (rejecting a generic "due process challenge" based in part on *Pickens*); *Strauss*, 221 S.W.3d at 789 (rejecting a generic "'as-applied' constitutional challenge" to the Tax Code in part because

14

there "was notice by publication of the sale"); *Session*, 206 S.W.3d 772 (no mention of due process or unconstitutionality); *Jordan*, 158 S.W.3d 29 (same).

Moreover, as the *Security State* court concluded, "[t]hese cases are distinguishable . . . because none involved a record lienholder with a prior lien against the property." *Id.* at 724; *Roberts*, 321 S.W.3d at 675 (an adverse-possession claimant brought a trespass to try title action against a tax sale purchaser based in part on lack of notice); *W.L. Pickens*, 281 S.W.3d at 118–19 (former mineral interest owner filed suit challenging tax sale as void for lack of service and joinder); *Strauss*, 221 S.W.3d at 787 (a land owner sued challenging a tax sale as void for lack of notice); *Session*, 206 S.W.3d at 774–75 (an adverse-possession claimant brought a trespass-to-try-title action against a tax-sale purchaser based on the lack of notice of the tax sale); *Jordan*, 158 S.W.3d at 32–33 (prior land owners counterclaimed against a tax purchaser to set aside the tax sale).[8]

The defendants cite two other unpublished state cases, *WMC Mortgage Corp. v. Moss*, No. 01-10-00948-CV, 2011 WL 2089777 (Tex. App.-Houston [1st Dist.] 2011, no pet.) (mem. op.), and *Holmes v. Cassell*, No. 04-11-00928-CV, 2013 WL 5497871 (Tex. App.-Houston [14th Dist.] Aug. 15, 2013, no pet.) (mem. op.), but neither requires a different result. In *WMC*, which involved the same defendant, Abe Moss, the plaintiff claimed a violation of § 51.002, the notice required by Section 51.002 of the Texas Property Code rather than of federal due process rights. Moreover,

---

[8] The defendants also ask the court to certify this question to the Texas Supreme Court, given the split in authority among the state's intermediate appellate courts. As discussed above, however, the published cases are not in conflict. To the extent they do, Deutsche Bank's claim stems from a violation of the United States Constitution, not Texas state law, and *Security State* is the only case that applies *Mennonite*. Certification does not appear justified on this record.

WMC did not involve the complete lack of service or notice.  Instead, in *WMC*, the "foreclosure notice was successfully delivered at the Thorton Avenue address, and WMC did not expressly deny actual receipt of the notice" that was sent to the wrong address.  *Id.* at *1, *4 (considering WMC's argument that it "did not receive proper notice of the foreclosure sale under Section 51.002 of the Property Code").  *Holmes* did address a generic claim of being "denied due process," but the court relied on *Roberts* and not the federal Constitution, and never cited *Mennonite*.  *See Holmes*, 2013 WL 5497871, at *5.

Finally, following the defendants' intermediate appellate authority would contravene Texas Supreme Court precedent that "[a] State law time limit is unenforceable when it violates due process."  *In re E.R.*, 385 S.W.3d 552, 561 (Tex. 2012).  In *In re E.R.*, the Texas Supreme Court held that the Texas Family Code "statute's time limits" for challenging an order terminating parental rights "cannot foreclose an attack by a parent who was deprived of constitutionally adequate notice" because "the statute cannot place a temporal limit on a challenge to a void judgment filed by a defendant who did not receive the type of notice to which she was constitutionally entitled."  *Id.* at 566-67.  *See also id.* at 562 ("Most state courts that have considered the issue have reached a similar conclusion: due process prevails over a state law time limit, even one imposed on challenges to termination of parental rights or adoptions.").[9]

---

[9] *In re E.R.* dealt with a court-imposed custody order outside the real estate context and did not address a fact pattern involving a subsequent good-faith purchaser for value.  But the court did discuss the arguably stronger reliance interests present in the context of a child-custody determination.  *In re E.R.*, 385 S.W.3d at 568 ("[W]hen a judgment has prominent future effects, such as a judgment determining marital or filial status, reliance interests are very likely to arise." (quoting 2 Restatement (Second) of Judgments, § 66)); *see also id.* ("Few judgments have more

The Tax Code's limitations period does not preclude a quiet-title claim based on a constitutional due process notice violation.

### B.      Whether Deutsche Bank Was Given Constitutionally Adequate Notice

The next issue is whether, on this record, Deutsche Bank as a matter of law failed to receive notice to which it was constitutionally entitled.  If no notice was given, the tax sale was void (not voidable) as to Deutsche Bank and limitations does not bar its quiet-title suit.  *See Security State*, 397 S.W.3d at 723 ("A collateral attack may be brought against a void judgment at any time; it need not be brought within a definite time period after the judgment's rendition." (citing *Rivera*, 379 S.W.3d at 271)); *Mennonite Bd.*, 462 U.S. at 800 (reversing a state-court quiet-title order against a prior record lienholder because the tax sale violated the lienholder's due process rights, even though the time to challenge the sale under state law had expired).  If, on the other hand Deutsche Bank did receive constitutionally adequate notice, then the tax sale was not void on this basis, and Deutsche Bank's quiet-title claim is time-barred under the Tax Code.

Because the tax sale deprived Deutsche Bank of its "legally protected property interest, [it] [was] entitled to notice reasonably calculated to apprise [it] of a pending tax sale." *Mennonite Bd.*, 462 U.S. at 799 (citation omitted); *see also Peralta*, 485 U.S. at 84 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action . . ." (quotation omitted)).  "A reasonable effort to provide the lienholder with actual notice

_____

substantial future ramifications than those affecting parentage.").

17

is required to be made by personal service or by mail if the lienholder is identified in the public records." *State Security*, 397 S.W.3d at 721-22 (citing *Mennonite Bd.*, 462 U.S. at 800 ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.")).   "When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service.   But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane* [*v. Central Hanover Trust Co.*, 339 U.S. 306 (1950)]."  *Mennonite Bd.*, 462 U.S. at 798.

Deutsche Bank was not given notice reasonably calculated to apprise it of the pending tax sale.   Publication notice was insufficient because Deutsche Bank was lienholder of record and reasonably, even readily, identifiable.   The notice mailed to Argent's last known address was not reasonably calculated to apprise *Deutsche Bank* of the pending tax sale.   Although the defendants may have sent notice to Argent's "last known available address," they did not send notice to Deutsche Bank's.   A title search on the property would have quickly and easily discovered that Deutsche Bank had acquired the Deed of Trust from Argent in February 2009 and recorded it that same month, long before the September 2009 tax sale.   Here, as in *Mennonite*, the "mortgage on file with the county recorder identified" the current mortgagee.   *Id.* n.4.   Deutsche Bank was the mortgagee-assignee and its interest as senior lienholder of record was a matter of public record.   Deutsche Bank's "address could have been ascertained by reasonably diligent efforts."  *Id.*  Merely

sending notice to Argent, which formerly held a security interest in the property but no longer did based on the county recorder's records, was not reasonably calculated to inform Deutsche Bank of the pending tax sale.

*Davis Oil*, which rejected a due-process challenge by the assignee of a mineral interest, does not require a different result. The panel in *Davis Oil* "conclude[d] that the record amply support[ed] the district court's finding that a search of the conveyance records *to identify parties with mineral interests* would be unduly burdensome and 'is a task *beyond the routine examination of land records* that was involved in *Mennonite*." *Id.* (quoting *Bender v. City of Rochester, N.Y.*, 765 F.2d 7, 11 (2d Cir. 1985)) (emphasis added). The court went to great lengths to clarify that its decision was based on the complexity of identifying the competing mineral interests in that case, not on the type of records involved here. The court noted:

> This holding is not inconsistent with *Bonner* and *Portis* which held, respectively, that a third possessor and a second mortgagee were entitled (with some qualifications in each case) to more than constructive notice of the seizure of property in a foreclosure by executory process. *Bonner*, 452 F.Supp. at 1302; *Portis*, 652 F.Supp. at 645. . . [A] reviewing court could easily conclude that the search of property records required to identify a third possessor or second mortgagee is less burdensome than that required to identify parties with mineral interests in the same land.

*Id.* at 790 n.24. Here, by contrast, even though Deutsche Bank was an assignee, it had duly recorded its interest in the property. The defendants did not have to look beyond the county property records to identify Deutsche Bank and learn its address for notice purposes. Like *Mennonite*, this case involved a "routine examination of land records," not a complicated search of mineral-interest conveyance records. *Id.*

The defendants argue that Deutsche Bank should have been more diligent in protecting its rights in the property by making sure that the borrowers were not behind in their tax payments.  The case law makes this argument unavailing.  In *Mennonite*, "[t]he Supreme Court explained that notice by personal service or mail is required 'even though sophisticated creditors have means at their disposal to discover whether property taxes have not been paid and whether tax sale proceedings are therefore likely to be initiated.'" *Id.* at 722 (quoting *Mennonite Bd.*, 462 U.S. at 799).  "Finally, knowledge that taxes are delinquent is not equivalent to the constitutionally required notice that a tax sale is pending."  *Id.* (citing *Mennonite Bd.*, 462 U.S. at 799).

> ### C.      Whether the Defendants May Defeat Deutsche Bank's Quiet-Title Claim as Bona      Fide Purchasers

        **C.** Whether the Defendants May Defeat Deutsche Bank's Quiet-Title Claim as
**Bona** Fide Purchasers

The defendants argue that regardless of whether Deutsche Bank was deprived of its property interest without due process, its quiet-title claim fails because they are bona fide purchasers.  That argument fails to acknowledge the difference between a void and a voidable foreclosure sale.  The tax sale was void as to Deutsche Bank.  In *Henke v. First Southern Properties, Inc.*, 586 S.W.2d 617, 620 (Tex. App.-Waco 1979, writ refused n.r.e.), the court stated:

> the [common-law] doctrine of good faith purchaser for value without notice does not apply to a purchaser at a void foreclosure sale.  One who bids upon property at a foreclosure sale does so at his peril.  If the trustee conducting the sale has no power or authority to offer the property for sale, or if there is other defect or irregularity which would render the foreclosure sale void, then the purchaser cannot acquire title to the property.

*Id.* at 620.  If a property transfer is void, rather than voidable, then it cannot be taken by a bona fide purchaser.  *See Slaughter v. Qualls*, 162 S.W.2d 340, 345 (Tex. 1942) ("The question whether the

trustee's deed is void or voidable depends on its effect upon the title at the time it was executed and delivered. If it was a mere nullity, passing no title and conferring no rights whatsoever, it was absolutely void. . . .").

Couching the argument in terms of § 34.08(b) of the Texas Tax Code rather than on common law also does not change the result.  Section 34.08(b) turns on the limitations period in § 33.54.  *See* TEX. TAX CODE § 34.08(b) ("A person may not commence an action challenging the validity of a tax sale *after the time set forth in Section 33.54(a)(1) or (2)*, as applicable to the property, against a subsequent purchaser for value who acquired the property in reliance on the tax sale." (emphasis added)).  Because Deutsche Bank did not receive notice when the tax foreclosure and sale occurred, the § 33.54 limitation period did not begin to run.

Even if the defendants could defeat the quiet-title claim on this ground, "[s]tatus as a bona fide purchaser is an affirmative defense to a title dispute," *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001), and the defendants never pleaded this defense in either their answer or amended answers.  (Docket Entry Nos. 10, 14, 18, 26, 35).[10]  Because plaintiffs have the burden of overcoming this defense, *see Madison*, 39 S.W.3d at 606; *In re Harydzak*, 406 B.R. 499, 510 (S.D. Tex. 2009), the failure to plead and thereby give notice of this defense is prejudicial to the plaintiff, particularly when, as here, the defendants did not raise it until they responded to Deutsche Bank's

---

[10] The defendants did assert that the bank "failed to comply with § 34.08," (Docket Entry No. 14, at 2), but that goes to § 34.08(a), which requires that plaintiffs first "deposit[] into the registry of the court an amount equal to the delinquent taxes, penalties, and interest" before "commenc[ing] an action that challenges the validity of a tax sale." TEX. TAX. CODE. § 34.08(a).  Section 34.08(b), which prevents plaintiffs from invalidating sales to subsequent purchasers for value once the limitations period in § 33.54 runs, does not have a similar independent compliance requirement.

motion for partial summary judgment. *See Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 633 (5th Cir. 2013) ("[I]t is left up to the discretion of the trial court to determine whether the party against whom the unpleaded affirmative defense has been raised has suffered prejudice or unfair surprise.").[11]

### D.    Deutsche Bank is Entitled to Partial Summary Judgment

Based on the undisputed facts in the record, Deutsche Bank did not, as a matter of law, receive notice to which it was constitutionally entitled. The tax sale was void as to Deutsche Bank. The Texas Tax Code's one-year limitations period does not bar Deutsche Bank's suit.[12]   And because the sale was void as to Deutsche Bank's interest, neither Moss nor D&Y could take free and clear title to the property as bona-fide purchasers, even if they had timely pleaded this affirmative defense.

## IV.    Conclusion

Deutsche Bank's motion for partial summary judgment, (Docket Entry No. 27), is granted. The tax-lien foreclosure sale to Abe Moss and his transferee, D&Y, is void as to Deutsche Bank's security interest under the 2003 Deed of Trust in the property located at:

---

[11]   This prejudice is particularly problematic when, as here, there is a serious question regarding constructive and actual notice due to the fact that Moss is the sole shareholder of D&Y, the purported bona fide purchaser.

[12]   For similar reasons, the defendants' reliance on the state's four-year limitations period is unavailing.  *See Rivera*, 379 S.W.3d at 273-74 ("PNS filed its attack outside the bill of review's four-year statute of limitations period and its complaints amount to no more than allegations of improper service.  We must therefore determine whether PNS's complaints rise to the level of a due process violation that would render the default judgment void and subject to collateral attack.").

Lot 4, in Block 14, Williamsburg Settlement Section 2, a Subdivision in Harris County, Texas, According to the Map or Plat Thereof Recorded in Volume 272, Page(s) 95, of the Map Records of Harris County, Texas.

(Docket Entry No. 27, Ex. A, at 20).

Deutsche Bank's claim for wrongful foreclosure, (Docket Entry No. 16, at 6), Moss and D&Y's counterclaim for attorney's fees and costs, (Docket Entry No. 15, at 1-2), and Moss's cross-claim against Gonzalez Financial, (*id.*, at 2), remain.  A status and scheduling conference is set for **January 23, 2015**, at 8:00 a.m. at 515 Rusk Avenue, Houston Texas, 77002, Courtroom 11-B.

SIGNED on January 15, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge